**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Kristine Annamay Bell

    v.                                      Case No. 16-cv-362-LM

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Kristine Bell moves to reverse the Acting Commissioner's decision to deny her applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. Those two motions are before this magistrate judge for a report and recommendation. For the reasons that follow, this matter should be remanded to the Acting Commissioner for further proceedings.

## I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'"  Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

    As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts."  Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting
Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS,
955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations
omitted).  Moreover, the court "must uphold the [Acting
Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988) (per curiam).  Finally, when determining
whether a decision of the Acting Commissioner is supported by
substantial evidence, the court must "review[] the evidence in
the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting
Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material
Facts.  That statement, document no. 15, is part of the court's
record and will be summarized here, rather than repeated in
full.

In April of 2008, Bell was taken to the emergency room at
Southern New Hampshire Medical Center after her mother found her

unresponsive.  An emergency department note indicates that Bell was suffering from an overdose, and had an alcohol level of 255.[1] After she was seen in the ER, Bell was admitted to the intensive care unit for overdose and respiratory failure.  From there, she was "transferred to the Psychiatric Unit for further evaluation and treatment."  Administrative Transcript (hereinafter "Tr.") 965.  She remained hospitalized for 11 days, and was discharged with diagnoses of alcohol dependence, substance-induced depression, and bulimia.  Bell was taken to the ER again, in April of 2009, "smell[ing] heavily of alcohol" and "obviously intoxicated."  Tr. 363.  In 2010, Bell lost her driver's license after being charged, twice, with driving while under the influence.

In August of 2008, Bell established care with Dr. Archie Dickinson as her primary care provider.  In his intake note, Dr. Dickinson: (1) noted Bell's history of both alcohol dependence (dating back to her teenage years) and bulimia; and (2) reported that Bell had been seeing a psychiatrist monthly.

In March of 2013, Bell saw her psychiatrist, Dr. Hisham Hafez of the Greater Nashua Mental Health Center ("GHMHC"), for the first time in about a year.  She had follow-up visits in April, July, August, October, and December of 2013.  The

---

[1] As it turns out, Bell's drug screen was negative.

progress notes from each of those visits list diagnoses of recurrent, moderate major depressive disorder and alcohol dependence.  The narrative section of Dr. Hafez's progress note from the August visit states, in pertinent part:

> Sleep is decreased.  Appetite is erratic.  She reported that since she stopped drinking her eating difficulties had reemerged.  She reports binging and purging approximately once a day.  This has been a pattern that seems to decrease when she is intoxicated.

Tr. 385.

On October 10, 2013, Bell applied for DIB and SSI, claiming that she had been disabled since December 31, 2008, which is the date on which she was last insured for DIB.

The Disability Determination Explanation ("DDE") forms that resulted from Bell's applications indicate that when the Social Security Administration ("SSA") considered Bell's applications, it relied upon medical evidence from both GNMHC and Dr. Dickinson.  The section of each DDE form that lists the evidence of record indicates that when Bell's claims were initially reviewed, the record included no opinions.  See Tr. 70-71, 79-80.

The DDE forms also report that a state agency psychiatric consultant, Dr. Edward Martin, determined that Bell suffered from two medically determinable impairments, an affective disorder and an addiction disorder.  As for when Bell began to

have those impairments, Dr. Martin wrote: "M[edical evidence of record] is insufficient from [alleged onset date] of 2008 to [modified onset date], but does support setting [modified onset date] at 01/01/2013 based on treatment notes."  Tr. 73, 82. While Dr. Martin identified two medically determinable impairments, he also determined that neither of them qualified as a "severe" impairment, as that term is used in the SSA regulations.  That determination was based upon Dr. Martin's review of "medical records from [GNMHC] from March to August 2013 and from [Bell's] primary care physician Dr. Dickinson from August 2008 through August 2012."  Jt. Statement (doc. no. 15) 19-20.  In support of his determination that Bell had no severe impairments, Dr. Martin relied upon Dr. Hafez's August 2013 progress note, which he characterized as reporting: "Her sleep and appetite are good; eating problems and weight stable; no complaints; some residual sadness, but overall function good." Tr. 72, 81.

The DDE forms also document a psychiatric review technique ("PRT")[2] assessment conducted by Dr. Martin, covering the period from January 1, 2013, through the date of the assessment, December 23, 2013.  According to Dr. Martin, Bell had mild

---

[2] The Social Security Administration uses the PRT to evaluate the severity of mental impairments.  See 20 C.F.R. §§ 404.1520a & 416.920a (describing the PRT).

restrictions on her activities of daily living, no difficulties
in maintaining social functioning, and mild difficulties in
maintaining concentration, persistence, or pace.  He further
indicated that there was insufficient evidence to determine
whether Bell had suffered repeated episodes of decompensation
each of extended duration.  In support of the conclusions in his
PRT, Dr. Martin stated:

> Source is H. Hafez, MD (treating) whose <u>opinions</u> are
> given weight.  Notice is taken of diagnosis involving
> alcohol – the claimant has been abstinent from alcohol
> for a sufficient amount of time that we are presuming
> no current effect on function.

> Dr. Hafez <u>opines</u> that Ms Bell, despite any
> impairments, is able to adequately care for herself
> independently if required to do so, to interact
> effectively with others, to maintain concentration/
> persistence/pace, and to otherwise tolerate the
> stresses common to work or work-like situations.
> Thus, Impairments Not Severe is an appropriate
> conclusion.

Tr. 73, 82 (emphasis added).  Notwithstanding Dr. Martin's
reference to Dr. Hafez's "opinions," the DDE forms indicate that
at the time of Dr. Martin's assessment, the record included no
medical opinions.  Dr. Martin does not cite any opinions, and
the court has been unable to locate any source in the record for
the opinions that Dr. Martin attributes to Dr. Hafez regarding
Bell's capacities for activities of daily living; social
functioning; and concentration, persistence, and pace.

After conducting a hearing on Bell's claim, the

Administrative Law Judge ("ALJ") issued a decision in which he found that as of December 31, 2008, Bell "had no medically determinable impairment." Tr. 25. The ALJ's decision also includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following medically determinable impairments: major depressive disorder, eating disorder, anxiety disorder not otherwise specified, with panic attacks, and a history of alcohol abuse in remission for about one year (20 CFR 404.1521 et seq. and 416.921 et seq.).
>
> . . . .
>
> 4. The clamant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq. and 416.921 et seq.).

Tr. 20. In his decision, the ALJ gave substantial weight to Dr. Martin's opinion on the severity of Bell's impairments in the period after January 1, 2013, see Tr. 30, which he characterized as "supported by the opinion of Hisham Hafez, MD . . . that the claimant's overall function was quite positive," id.

## III. Discussion

### A. The Legal Framework

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether the ALJ correctly determined that Bell was not under a disability from December 31, 2008 through May 28, 2015.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).

**B.   Bell's Claims**

Bell claims that the ALJ erred by determining, at step 2 of the sequential evaluation process, that she had no severe impairments, and also erred by failing to consider the combined effect of her physical and mental impairments.  Bell's first argument is persuasive, and dispositive.

With respect to the period before Bell's date last insured, the ALJ did not even consider whether Bell had any severe impairments because he had determined that as of that date, she had no medically determinable impairments at all.  That was an error.

To reach his conclusion that Bell had no medically determinable impairment before her date last insured, the ALJ relied upon the records generated by Bell's treatment with Dr. Dickinson, which he described this way:

> Dr. Dickinson first saw the claimant on August 12, 2008.  The claimant reported her alcohol dependence and that she had a voluntary rehab stay in April 2008. While the term "overdose" was used, the extent was unknown.  The drug screen was only positive for alcohol.  . . .

10

On August 12, 2008, Dr. Dickinson observed the
claimant to present as well-developed, well-nourished,
and in no apparent distress.  Dr. Dickinson noted
normal physical findings, including that the claimant
presented with normal neurological findings, and full
range of motion of all extremities.  He made no
observation or assessment of any symptoms of mental
health condition, and did not assess any eating
disorder or alcohol dependence.  The claimant was
noted to weigh 135 pounds.  Dr. Dickenson also saw the
claimant on September 12, 2008 and October 17, 2008.
On both dates, he noted normal physical findings,
including that the claimant presented as well-
nourished, and in no apparent distress.  He made no
observation or assessment of any symptoms of mental
health condition, and did not assess any eating
disorder or alcohol dependence.

. . . .

. . .  There are no records inconsistent with the
findings of December 19, 2008 that the claimant had
normal physical and mental health.  The claimant had
no medically determinable impairment on December 31,
2008.

Tr. 24-25. (citations to the record omitted).  What the ALJ

failed to recognize, however, is that during the time in late

2008 when Bell was treating with Dr. Dickinson, she was also

seeing a psychiatrist monthly, as Dr. Dickinson noted, see Tr.

279, and she had prescriptions for: (1) an anti-depressant

(Cymbalta);[3] (2) an anti-depressant that is also used to treat

bulimia (fluoxetine);[4] (3) an anti-anxiety medication

---

[3] See Dorland's Illustrated Medical Dictionary 457, 572
(32nd ed. 2012).

[4] See Dorland's, supra note 4, at 772.

(lorazepam);[5] and (4) at least two different medications used to treat alcoholism (Antabuse and Campral).[6]

Moreover, the December 19, 2008, findings on which the ALJ relies for the proposition that claimant had "normal physical and mental health" are not as benign as the ALJ makes them out to be.  Under the heading "Current Issues," Dr. Dickinson reported:

> Drinking – has been back to drinking a bit but is going to get back on her antabuse[.]
>
> Monthly psychiatry visits.
>
> Chronic constipation – since started drinking at age 14.  When she [discontinues] alcohol, can't go to [the bathroom] – sometimes up to a week between [bowel movements].

Tr. 385.  Dr. Dickenson then described Bell's history as including alcohol abuse, bulimia, and depression, and noted a hospital admission for depression in 2008.  Finally, he noted that Bell was currently taking lorazepam, fluoxetine, Cymbalta, and Antabuse.  While the ALJ devoted a full paragraph of his decision to Dr. Dickinson's report on Bell's December 19, 2009, physical exam, and discussed many of Dr. Dickinson's findings, he said nothing at all about the list of prescriptions that Dr.

---

[5] See Dorland's, supra note 4, at 1074.

[6] See Dorland's, supra note 4, at 97, 558-59 (Antabuse); 8, 275 (Campral).

Dickinson included in his report.  The court has no difficulty concluding that a person who has been prescribed two anti-depressants (one of which is also used to treat bulimia), an anti-anxiety medication, and a medication used to treat alcoholism is not, as the ALJ posits, someone with "normal physical and mental health."  Tr. 25.

In short, given Bell's hospitalization in April of 2008 and the array of medications she was being prescribed during the fall of that year for depression, anxiety, and alcoholism, Dr. Dickinson's observations that Bell was well-nourished and not in distress, and the fact that he did not diagnose any mental impairments, is not substantial evidence to support the ALJ's finding that Bell had no medically determinable impairment prior to her date last insured.[7]  Because the ALJ's finding is not supported by substantial evidence, this case should be remanded, and on remand, it will be necessary to determine, in the first

---

[7] In her motion memorandum of law, the Acting Commissioner argues that Dr. Martin's determination that the "evidence submitted was insufficient to establish even a medically determinable impairment prior to December 31, 2008," doc. no. 14-1, at 9, is substantial evidence supporting the ALJ's finding on that matter.  But, the ALJ made no such argument, and "[i]n general, the court cannot affirm the Acting Commissioner's decision based on a rationale or analysis that the ALJ did not consider."  Ledoux v. Colvin, No. 13-cv-530-JD, 2016 WL 3676193, at *7 (D.N.H. July 6, 2016)  (citing High v. Astrue, No. 10-cv-69-JD, 2011 WL 941572, at *6 (D.N.H. Mar. 17, 2011); Jenness v. Colvin, No. 15-cv-005-LM, 2015 WL 9688392, at *7 (D.N.H. Aug. 27, 2015)).

instance, whether any of the impairments that Bell had prior to December 31, 2008, were severe, as that term is used in the SSA regulations.

In light of the recommended disposition of this case, there is no need to go any further. However, for the benefit of the Acting Commissioner on remand, there is one issue that, perhaps, merits further consideration.

In determining that the medically determinable impairments that Bell had after January 1, 2013, were not severe impairments, the ALJ relied heavily upon the opinion(s) that Dr. Martin reported in the DDE form, but for several reasons, Dr. Martin's opinions may not qualify as substantial evidence to support the ALJ's conclusion. First, there is Dr. Martin's characterization of Dr. Hafez's August, 2013, progress note. Somehow, Dr. Martin translated "decreased" sleep, "erratic" appetite, and daily binging and purging, see Tr. 385, into: "[h]er sleep and appetite are good; eating problems and weight stable," Tr. 72, 81. Then, when explaining the basis for his PRT assessment, Dr. Martin referred to the "opinions" of Dr. Hafez, to which he gave great weight. But, the DDE form that reports Dr. Martin's PRT assessment also reports, unambiguously, that the records from Dr. Hafez's practice included medical evidence but no opinions. The ALJ, in turn, seems to have

14

adopted Dr. Martin's mischaracterization of the record when he gave "substantial weight" to Dr. Martin's opinions because they were "supported by the opinion of Dr. Hisham Hafez, MD."  Tr. 30.[8]

Finally, while the record does include an actual opinion from Dr. Hafez on Bell's functional capacity, reported in a Mental Impairment Questionnaire, and includes opinions from three other medical professionals (Dr. Dickinson, Elizabeth Frescoln, and Sarah Duplinsky) reported on similar questionnaires, Dr. Martin had the benefit of none of those opinions when forming his opinion, because his opinion predated all of them.  That, in turn, diminishes the amount of weight that may be given to Dr. Martin's opinion.  See Snay v. Colvin, No. 13-cv-316-JD, 2014 WL 2616823, at *5 (D.N.H. June 12, 2014) ("A state agency consultant's opinion that is based on an incomplete record, when later evidence supports the claimant's limitations, cannot provide substantial evidence to support the ALJ's decision to deny benefits.") (citing Alcantara v. Astrue,

---

[8] Moreover, while the so-called opinion from Dr. Hafez that the ALJ cites as support for Dr. Martin's opinion is dated October 16, 2013, see Tr. 30, 383, the parties' Joint Statement of Material Facts says that "Dr. Martin reviewed medical records from Greater Nashua Mental Health Center [where Dr. Hafez practiced] from March to August of 2013," doc. no. 15, at 19-20. In other words, it seems far from clear that Dr. Martin ever even saw the "opinion" by Dr. Hafez that, according to the ALJ, supports Dr. Martin's opinion.

257 F. App'x 333, 334 (1st Cir. 2007); <u>Padilla v. Barnhart</u>, 186
F. App'x 19, 20 (1st Cir. 2006); <u>Wenzel v. Astrue</u>, No. 11-cv-
269-PB, 2012 WL 2679456, at *4 (D.N.H. July 6, 2012)).

For all of the foregoing reasons, Dr. Martin's opinion does
not appear to be substantial evidence for a determination that
Bell did not have a mental impairment that crossed the low
threshold of step 2 severity.  <u>See</u> <u>Ramos v. Barnhart</u>, 60 F.
App'x 334, 335 (1st Cir. 2003) (per curiam) ("a claim may be
denied at step 2 for lack of a severe impairment only where
medical evidence establishes only a slight abnormality . . .
which would have no more than a minimal effect on an
individual's ability to work") (quoting <u>Barrientos v. Sec'y of
HHS</u>, 820 F.2d 1, 2 (1st Cir. 1987)).  To conclude, on remand, it
will be important to bear in mind "that the step two severity
requirement is intended 'to do no more than screen out
groundless claims.'"  <u>Ramos</u>, 60 F. App'x at 335 (quoting
<u>McDonald v. Sec'y of HHS</u>, 795 F.2d 1118, 1124 (1st Cir. 1986)).

## IV. <u>Conclusion</u>

For the reasons given, the Acting Commissioner's motion for
an order affirming her decision, document no. 14, should be
denied; Bell's motion to reverse that decision, document no. 12,
should be granted to the extent that the case is remanded to the

Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g); and the clerk of the court should be directed to enter judgment in accordance with the order adopting this report and recommendation, and close the case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

Andrea K. Johnstone
United States Magistrate Judge

July 19, 2017

cc:  Janine Gawryl, Esq.
     Robert Rabuck, Esq.